UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID JOHNSON, CONNIE JOHNSON, and AARON JOHNSON, | Case No. 1:13-cv-00492-EJL-CWD |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| CITY OF CALDWELL, CALDWELL POLICE DEPARTMENT, CITY OF NAMPA, NAMPA POLICE DEPARTMENT, CHIEF OF POLICE CHRIS ALLGOOD, CHIEF OF POLICE CRAIG KINGSBURY, OFFICER C. HESSMAN, OFFICER J. DAVIS, OFFICER J. BRIDGES, OFFICER B. DONEY, SGT. LATHRUP, and DOES I-X, | |
| Defendants. | |

Currently pending before the Court is a Rule 12(b)(6) motion to dismiss[1] for

failure to state a claim (Dkt. 19) filed by Defendants City of Nampa, Nampa Police

---

[1] Nampa Defendants filed their motion four months after they filed their answer (Dkt. 11), but nevertheless titled it as a motion to dismiss. Because the pleadings were closed at the time of the filing of the motion, this is effectively a Rule 12(c) motion for judgment on the pleadings. But, the Ninth Circuit Court of Appeals has held that Rule 12(c) and Rule 12(b)(6) are "functionally identical" and that the same standard applies to motions brought under either rule. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1063 n.4 (9th Cir.

Department, Chief of Police Craig Kingsbury, Officer Becky Doney, and Sgt. Mick Lathrop[2] ("Nampa Defendants"), and a motion to amend the complaint[3] (Dkt. 20) filed by David Johnson, Connie Johnson, and Aaron Johnson ("the Johnsons"). The Johnsons request permission to amend their complaint (Dkt. 1) pursuant to Federal Rule of Civil Procedure 15(a) in order to address the concerns raised in Nampa Defendants' motion to dismiss.

Presiding Judge Lodge referred all non-dispositive matters to the undersigned Magistrate Judge. (Dkt. 13 at 3.) Additionally, Judge Lodge referred the motion to dismiss and all related matters. (Dkt. 25.) Accordingly, the Court considers the two motions together and issues the following Report and Recommendation.

Having fully reviewed the record, the Court finds the facts and legal arguments are adequately presented in the briefs and record. In the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be

---

2011) (quoting *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989)). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing." *Dworkin*, 867 F.2d at 1192. Both Rule 12 motions challenge the legal sufficiency of the claims stated in the complaint. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).

[2]     Both the spelling "Lathrup" and "Lathrop" have been used throughout the pleadings and briefs. After some brief research, the Court concluded "Lathrop" to be the correct spelling of his name, and will proceed with this spelling.

[3]     The motion to amend the complaint was combined with a motion for extension of time to file a response to the Nampa Defendants motion to dismiss. (Dkt. 20.) The Court initially suspended the deadline for the Johnsons' response to the motion to dismiss pending resolution of the Johnsons' motion to amend (Dkt. 21), but upon further review and consideration, the Court found it appropriate to order further briefing from both parties on Nampa Defendants' motion to dismiss. (Dkt. 26.)

significantly aided by oral argument, this matter will be decided on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1.

The Court will consider the factual allegations contained in the proposed amended complaint in its analysis of the motion to dismiss. Even considering the amended factual allegations, the Court will recommend that the Nampa Defendants' motion to dismiss be granted, and consequently will recommend denying the motion to amend as moot. Because the deadline for amending the pleadings has come and gone, and the Court can discern no good cause for the delay, the Court will not recommend further permission to amend the pleadings.

## BACKGROUND

**1.     Facts[4]**

This lawsuit commenced on November 15, 2013, when the Johnsons filed a complaint against the City of Caldwell, Caldwell Police Department ("CPD"), City of Nampa, Nampa Police Department ("NPD"), Chief of Police Chris Allgood, Chief of Police Craig Kingsbury, Officer Chad Hessman, Officer J.L. Davis, Officer Josh Bridges, Officer Becky Doney, Sgt. Mick Lathrop, and Does I-X. The Johnsons filed this action under 42 U.S.C. § 1983 and allege the following Constitutional violations and state law claims: (1) Illegal Search in Violation of the Fourth Amendment; (2) Illegal Seizure in Violation of the Fourth Amendment; (3) Excessive Force in Violation of the Fourth Amendment; (4) Failure to Knock-and-Announce in Violation of the Fourth Amendment;

---

[4]     The following facts are taken from the Johnsons' proposed amended complaint and are taken as true for the purpose of deciding the motion to dismiss. (Dkt. 20-1.)

(5) Illegal Search and Seizure in Violation of Article I, § 17 of the Idaho Constitution;[5]

(6) Negligent Supervision; (7) False Imprisonment; and (8) Trespass.

This case stems from an incident that occurred the night of February 21, 2013, in Caldwell, Idaho. At approximately midnight, the Johnsons were awakened by a "loud crashing sound nearby." (*Id.* ¶ 23.) This loud noise was actually law enforcement officers dressed in SWAT gear who had kicked in the Johnsons' apartment door, entered their home with guns drawn, and were accompanied by a police canine. The officers immediately began yelling at and threatening the Johnsons, who remained silent. David and Aaron Johnson were handcuffed, and all three were forced into the hallway while the officers conducted a sweep of their apartment. The officers did not knock-and-announce their presence nor did the officers have a warrant to search the Johnsons' home

While the officers were conducting the sweep of the Johnsons' apartment, Defendant Hessman, again without knocking or announcing, kicked in the door of the neighboring apartment. The resident of the neighboring apartment, Bill Gerst, was threatened and ordered by the officers to crawl into the hallway while the officers conducted a sweep of his apartment. The officers then proceeded to break down another door down the hall. After the officers refused several requests from the Johnsons for an explanation, the Johnsons were allowed to return to their apartment. After the alleged raid, Defendant Davis reported back to Lathrop and Doney. Lathrop requested that Gerst be transported to the Caldwell Police Department so he could be interviewed by Doney.

---

[5]     This Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

The CPD officers had been dispatched based on information obtained from NPD of a "possible violent crime," "possible kidnapping and torture," or "homicide" that may have occurred in Caldwell.[6] (*Id.* ¶¶ 57, 58, 77.) NPD had received information that "Wild Mill Bill" (later identified as Bill Gerst) had posted an alarming photograph and threatening Facebook posts in which Gerst expressed a desire that someone would "beat up" Hilda Valle. (*Id.* ¶¶ 55, 68.) The photograph depicted a "female lying naked on a bed, covered in blood, and appeared to have several lacerations on her body." Upon receipt of this information, Doney and other NPD officers conducted a welfare check of Ms. Valle and confirmed that she was not in immediate danger. Ms. Valle provided the NPD officers with information regarding Gerst's residence. Presumably, because Gerst resided in Caldwell, NPD relayed this information to CPD. Thereafter, the events described above allegedly took place. Several Caldwell Officers and Canyon County Deputies have been identified as being on the scene the night of the alleged raid.

## 2.    Procedural Background

Prior to the filing of the lawsuit, the Johnsons' counsel sent a public records request to NPD seeking the NPD report prepared by Doney regarding the events at issue in this case. NPD denied the request, stating that it would interfere with ongoing enforcement proceedings. Accordingly, the Johnsons' counsel relied on the CPD reports already obtained when drafting the original complaint. (Dkt. 20 at 4.) The complaint

---

[6]    The Johnsons allege that these reports drastically vary from Doney's report, which allegedly states Gerst was merely suspected of "solicitation of battery." (Dkt. 20-1 ¶¶ 66–67.) This discrepancy, however, is not material to the determination of the motion to dismiss.

contained the same counts as the proposed amended complaint, but it assumes that both CPD and NPD officers were on the scene the night of the alleged raid.

On February 24, 2014, after the complaint had been filed but before an answer had been filed, Nampa Defendants' counsel wrote a letter to the Johnsons' counsel seeking voluntary dismissal from the case. Attached to this letter was a redacted copy of the NPD report. (Dkt. 22-3 at 3–12.)

The Johnsons' counsel responded, stating that she had not yet discussed dismissal with her clients, so the Nampa Defendants would not be dismissed at that time. On March 21, 2014, Nampa Defendants' counsel again requested to be voluntarily dismissed from the case during a telephone conversation with the Johnsons' counsel. Once again, the Johnsons, through their counsel, refused. Nampa Defendants allege that, during this telephone conversation, Johnsons' counsel propositioned another theory of liability for the Nampa Defendants, arguing that liability could be based on NPD's miscommunication of Gerst's address to CPD. (Dkt. 22-1 at 4.)

On March 24, 2014, Nampa Defendants filed their answer. (Dkt. 11.) On April 14, 2014, Nampa Defendants provided the Johnsons with their initial disclosures, which again included NPD's report. On this same date, Nampa Defendants again requested that they be voluntarily dismissed from the case. On May 7, 2014, the Johnsons responded by stating that, because there were discrepancies between the NPD reports and the CPD reports, Nampa Defendants would not be voluntarily dismissed. On July 23, 2014, the Nampa Defendants filed their motion to dismiss. On August 13, 2014, the Johnsons responded with the instant motion to amend the complaint, (Dkt. 20), and attached a copy

of the proposed amended complaint.[7] (Dkt. 20-1.) The Court allowed further briefing,

permitting the parties an opportunity to respond and reply the Johnsons' motion to

amend, and to the motion to dismiss, to allow the parties to incorporate all arguments

responsive to the issues raised. (Dkt. 21, 26.)

**3.      Scheduling Order**

The Scheduling Order issued by Judge Lodge stated "[a]ll amendments of

pleadings, joinder of parties, except for allegations of punitive damages, and pre-

alternative dispute resolution (ADR) discovery shall be completed on or before June 24,

2014." (Dkt. 13 at 2.) The Order further stated "[t]his deadline shall only be extended for

good cause shown." (*Id.*) The stated purpose of this deadline was to ensure that all parties

knew the claims and the parties well before the trial date. The Order further directed the

parties to serve all discovery requests that might relate to amendment well in advance of

this deadline. A jury trial is scheduled to begin August 25, 2015.

## MOTION TO DISMISS

**1.      Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement

of the claim showing that the pleader is entitled to relief[.]" The Supreme Court of the

United States created a "plausibility" standard requiring that allegations in a complaint be

plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

complaint is plausible when the factual content "allows the court to draw the reasonable

---

[7]      Notably, the proposed amended complaint (Dkt. 20-1) does not attempt to add any additional parties or causes of action. It simply adds or corrects facts to support the allegations originally complained of.

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). This standard does not require that the misconduct be "probable," but it "asks for more than just a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. The Supreme Court specified that "heightened fact pleading of specifics" is not required, "but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 662.

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cased in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Consequently, the Court should not grant a motion to dismiss for failure to state a claim "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hicks v. Small*, 69 F.3d 967, 969 (9th Cir. 1995) (quoting *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)). A claim is sufficient if it shows that the plaintiff is entitled to any relief which the court can grant, even if the complaint asserts the wrong legal theory or asks for improper relief. *See United States v. Howell*, 318 F.2d 162, 166 (9th Cir. 1963).

"[D]ismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003). The Ninth Circuit has held that, "in dismissals for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. Norther California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). Additionally, when evaluating a 12(b)(6) motion, judicial review is "limited to the contents of the complaint." *Clegg*, 18 F.3d at 754. However, exhibits attached to the complaint also may be considered. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480.

## 2.     Legal Standard Under 42 U.S.C. § 1983

Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To establish a prima facie case under § 1983, a plaintiff "must adduce proof of two elements: (1) the action occurred 'under color of law' and (2) the action resulted in a deprivation of

a constitutional right or a federal statutory right." *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 137, 140 (1979)). In other words, to state a claim under § 1983, a plaintiff must allege: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The threshold inquiry for a § 1983 action is "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140.

3.  **Discussion**

    A.  ***Fourth Amendment Violations Under 42 U.S.C. § 1983***

    Counts One through Four of the proposed amended complaint all allege violations of the Johnsons' Fourth Amendment Rights under the United States Constitution. Specifically, these counts allege: (1) illegal search; (2) illegal seizure; (3) excessive force; and (4) failure to knock-and-announce. However, the only specific allegation in these counts mentioning the Nampa Defendants is: "Whatever actions the officers on the scene took, it was at least in part a reaction to the misleading information that Nampa Police Officer Doney or others in the [Nampa police] department gave to them." (Dkt. 20-1 ¶¶ 92, 102, 113, 123.) Counts One and Two allude also to "other officers on the scene," but do not specifically mention any Nampa Police Department personnel. (Dkt. 20-1 ¶¶ 88, 96.)

    Counts One through Four each have a physical presence element to them. In other words, each of these counts requires some sort of physical invasion. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses,

papers, and effects, against unreasonable searches and seizures. . . ."  With respect to

Count One, the United States Supreme Court has held that searches "inside a home

without a warrant are presumptively unreasonable" absent an exception. *Groh v. Ramirez*,

540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586–87 (1980)

(internal quotation marks omitted)). Accordingly, in regards to Count Two, a seizure of a

person is unreasonable absent reasonable suspicion or probable cause. *See Terry v Ohio*,

392 U.S. 1 (1968). Further, in regards to Count Three, if the force used during the seizure

is objectively considered to be "excessive," it may violate the Fourth Amendment.

*Graham v. Connor*, 490 U.S. 386, 697 (1989). Last, with regard to Count Four, law

enforcement is required to knock-and-announce their presence absent exigent

circumstances. *E.g.*, *Hudson v. Michigan*, 547 U.S. 586 (2006).

In their motion to dismiss, Nampa Defendants argue that, to prevail, Plaintiffs

must plead and prove that Defendants acted under color of law and that their acts

deprived Plaintiffs of a particular right under the Constitution. (Dkt. 19-1 at 4); *see also*

*Tatum v. City and Cnty. of San Francisco*, 441 F.3d 1090, 1094 (9th Cir. 2006) (noting

that, to recover damages, plaintiff "must prove by a preponderance of the evidence that

the defendants deprived [a third party] of a constitutional right while acting under color

of state law"). Specifically, Nampa Defendants argue that there is no vicarious liability

under § 1983, and, therefore, a plaintiff must plead that each defendant violated the

Constitution with his or her own actions or omissions. (Dkt. 19-1 at 4.)

In response, Johnsons argue that, even though the Nampa Defendants were not

present at the Johnsons' home the night in question, they are liable for the alleged

constitutional violations of the CPD because the Nampa Defendants "set[ ] in motion the chain of events leading to the constitutional violations and by deliberately misleading Caldwell defendants regarding the purpose of the request for assistance." (Dkt. 27 at 2.) The Johnsons argue that Doney intentionally relayed false information to CPD, which compelled the CPD to engage in the acts that allegedly violated the Johnsons' constitutional rights. (*Id.* at 2–3.)

*Harris v. Roderick*, cited by the Johnsons, noted that "for purposes of § 1983 liability the requisite causal chain can occur through the 'setting in motion [of] a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" 126 F.3d 1189, 1196 (9th Cir. 1997) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)). In *Galbraith v. City and Cnty of Santa Clara*, also cited by the Johnsons, the Ninth Circuit held that "a § 1983 plaintiff must show" that an individual "made deliberately false statements or recklessly disregarded the truth" and that these falsifications were "material" to the constitutional violation. 307 F.3d 1119, 1126 (9th Cir. 2002) (citing *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)). In other words, to establish causation under § 1983, an individual must either (1) set in motion a chain of events that he or she knew or reasonably should have known would result in constitutional injury; or (2) intentionally mislead or recklessly disregard facts that are material to the constitutional violation.

The proposed amended complaint does not allege that Doney knew or should have known that the information conveyed would result in a constitutional injury, nor does it allege facts indicating that Doney deliberately lied or recklessly disregarded the truth.

The proposed amended complaint alleges only that the information Doney conveyed to CPD was "misleading." It simply states that "Nampa Police Officer Doney or others" provided CPD with "misleading information." (Dkt. 27 at ¶¶ 92, 102, 113, 123.) The supplying of "misleading" information that may be misunderstood in the context of a conversation or report is not equivalent to a deliberate lie or reckless disregard of the truth.

In the Johnsons' reply brief to the motion to amend, the Johnsons allege that Doney "had a duty to relay accurate information, rather than deliberately disseminating misleading information to CPD." (Dkt. 24 at 2.) However, the Johnsons' argument is insufficient to rescue their claim. While Doney may have had a professional obligation to relay accurate facts to the CPD officers, there are no facts alleged indicating Doney deliberately, or with reckless disregard of the truth, relayed false information to CPD such that he knew or should have known a constitutional injury would result. The mere dissemination of "misleading" information that was misinterpreted by the recipient is insufficient to rise to a constitutional violation.

The Johnsons further argue that Nampa Defendants are liable for the alleged Fourth Amendment violations based on the "supervisory role" that Nampa Defendants performed during the alleged raid, which was allegedly in accordance with department policy. (Dkt. 27 at 3.) The Johnsons point to two cases to support this contention: *Monell v. Dep't of Social Services of New York*, 436 U.S. 658 (1978) and *Van Ort v. Estate of Stanewich*, 92 F.3d 831 (9th Cir. 1996).

*Monell* was a landmark case by the Supreme Court that concluded "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. at 690. Further, *Monell* held that a governmental body "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not received formal approval through the government's official decision-making channels." *Id.* at 690–91. However, local governments are responsible only for "their own illegal acts. They are not vicariously liable under § 1983 for their employee's actions." *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011).

The proposed amended complaint points to NPD Policy 352.1.2 to support the claim that Nampa Defendants are liable for CPD's conduct. This policy, in its entirety, states:

> If assistance is needed from another agency, the employee requesting assistance shall first notify a supervisor of his/her intentions. The handling officer or supervisor should direct assisting personnel to where they are needed and to whom they should report when they arrive.
>
> The requesting officer should secure radio frequencies for use by all involved agencies so that communication can be coordinated as needed. If necessary, reasonable effort should be taken to provide radio equipment capable of communicating on the assigned frequency to any personnel who do not have compatible radios.

(Dkt 27-1.) The Johnsons argue this policy establishes that the Nampa Defendants acted in a supervisory role when they requested assistance from Caldwell officers.

In response, the Johnsons argue that Nampa Defendants were "in charge" of the incident "from start to finish, as outlined in the policy." (Dkt. 27 at 4.) Specifically, in the proposed amended complaint, the Johnsons allege that NPD relayed information to CPD regarding a "possible violent crime" and, after the alleged raid, Defendant Davis reported back to Lathrop and Doney of NPD. Lathrop then requested that Gerst be transported to the Caldwell Police Station, where he was interviewed by Doney. (Dkt. 20-1 ¶¶ 53–64.)

The Johnsons' argument misconstrues *Monell*. First, the premise of the Johnsons' claim rests upon vicarious liability. In other words, the Johnsons seek to hold NPD liable for the acts of CPD and its officers. Yet, even setting aside that CPD and NPD are separate police departments governed by two different municipalities that have no relationship to one another, vicarious liability is not a basis for asserting a claim under *Monell*.

Second, even assuming some supervisory capacity between the two departments, "[t]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution. . . ." *Monell*, 436 U.S. at 690. In *Monell*, the Supreme Court held that an employer's policy requiring pregnant employees to take unpaid leaves of absence before those leaves were medically required was a constitutional violation; and, because that violation arose from official policy, the employer could be held liable under § 1983. *Id.* at 694. The Johnsons do not allege in the proposed amended complaint or in the briefs that Nampa's policy is directly responsible for the alleged deprivation of their constitutional rights at the hands of CPD officers. Instead, the Johnsons argue that Nampa Defendants can be held liable

because they were involved in the alleged raid by complying with NPD Policy 35.1.2. The proposed amended complaint fails to allege a proper *Monell* claim because the Johnsons do not allege that NPD Policy 352.1.2 is itself responsible for the alleged constitutional deprivation.

Further, *Van Ort* instructs that "a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*;" instead, "the policy must be the proximate cause of the section 1983 injury." 92 F.3d at 837 (citing *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986); *Arnold v. Int'l Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981)). "Without proximate cause, there is no section 1983 liability." *Van Ort*, 92 F.3d at 837. (citing *Arnold*, 637 F.2d 1355). This "causal connection can be established not only by some kind of direct personal participation in the deprivation but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Van Ort*, 92 F.3d at 836 (quoting *Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir. 1988)).

*Van Ort* held that the plaintiffs failed to prove causation because the defendant's independent, intervening actions broke the chain of causation; therefore, the third party was free from § 1983 liability. *Id.* at 837. Similarly here, the Johnsons have not alleged, nor can they allege, facts sufficient to establish causation. There is no allegation that NPD instructed the CPD on the manner by which to make contact with the person of interest, nor is a *Monell* claim against Nampa Defendants properly pled in the proposed amended complaint. Even if a *Monell* claim were properly pled in the proposed amended

complaint, the Johnsons have failed to establish causation because CPD's actions were an intermediate, intervening cause of the alleged constitutional violations. Accordingly, as to these claims, the undersigned will recommend that the Nampa Defendants' motion to dismiss be granted.

**B.**     *State Law Claims*

If accepted, the above recommendation dispenses with the Johnsons' federal claims asserted against the Nampa Defendants. In exercising its discretion to retain or decline supplemental jurisdiction over state law claims after federal claims have been dismissed, the Court must consider whether retaining or declining jurisdiction will best accommodate "the objectives of economy, convenience and fairness to the parties, and comity." *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). Here, the Court determines that the above objectives would be best served by considering the Johnsons' asserted state law claims, given they arise from the same facts underlying their federal constitutional claims.

**(1)**     *Count Five: Illegal Search and Seizure in Violation of Article I, § 17 of the Idaho Constitution*

Count Five of the proposed amended complaint alleges a violation of Article I, § 17 of the Idaho Constitution. This section of the Idaho Constitution provides the same protections as the Fourth Amendment to the U.S. Constitution—the right to be free from unreasonable searches and seizures. Similar to the above discussion, the only allegation in this Count specific to any of the Nampa defendants is: "Whatever actions the officers

on the scene took, it was at least in part a reaction to the misleading information that Nampa Police Officer Doney or others in the department gave to them." (Dkt. 20-1 ¶ 128.)

Although the Idaho Supreme Court has never explicitly addressed this issue, the District of Idaho has recognized that Idaho law does not provide a remedy similar to 42 U.S.C. § 1983 that would allow individuals to recover monetary damages for an alleged violation of their civil liberties under the Idaho Constitution. *Sommer v. Elmore Cnty.*, 903 F.Supp.2d 1067, 1074 (D. Idaho 2012); *see also Boren v. City of Nampa*, No. CIV 04–084–S–MHW, 2006 WL 2413840 *10 (Aug. 18, 2006) (court is "confident that [the Supreme Court of Idaho] would not find a private cause of action" for violation of a person's civil liberties under Article 1 of the Idaho Constitution).

Because there is no legally recognized private cause of action to recover monetary damages based on an alleged violation of civil liberties under the Idaho Constitution, and the Johnsons have not alleged that any NPD officers were on the scene the night of the alleged raid, the Johnsons have failed to state a claim upon which relief can be granted.

### (2) *Count Six: Negligent Supervision*

Count Six of the proposed amended complaint alleges that, the City of Nampa, Nampa Police Department, and Kingsbury "have a duty to ensure that when they ask for an agency assist they pass on reliable and truthful information." (Dkt. 20-1 ¶ 132.) Specifically, the Johnsons allege that all defendants "have a duty to train and supervise" officers regarding probable cause and Fourth Amendment protections, and that they violated that duty by either not generating or abiding by guidelines. (*Id.* ¶¶ 137–140.)

Because this is a state law claim, the Court refers to Idaho case law regarding negligent supervision. Alleging negligence requires the Johnsons to show that NPD "owed them a legal duty to conform to a certain standard of conduct; a breach of that duty; a causal connection between [NPD's] allegedly negligent conduct and [the Johnsons'] injury; and damages." *Podolan v. Idaho Legal Aid Servs., Inc.*, 854 P.2d 280, 288 (Idaho Ct. App. 1993) (citing *Black Canyon Racquetball v. First Nat'l Bank*, 804 P.2d 900, 904 (Idaho 1990)). Further, "[i]n the context of negligent supervision, duty is the product of the supervisor's 'special relationship' with the supervised individual, not with the injured person."[8] *Id.* at 289.

Nampa Defendants argue that, because there is no showing of negligence and no allegation of a special relationship between the Nampa Defendants and the Caldwell Defendants, the Johnsons have failed to allege a claim for negligent supervision. (Dkt. 19-1 at 8.) The Court agrees.[9] The Johnsons have failed to state a claim of negligent supervision because they have not alleged any type of special relationship; therefore, the undersigned will recommend that Nampa Defendants' motion to dismiss be granted on this count.

---

[8]     The traditional law of torts specifies several types of "special relationships," including, but not limited to: common carriers and their passengers; an innkeeper and his or her guests; a school with its students; and a landlord with his or her tenants. *See* RESTATEMENT (THIRD) OF TORTS: PHYS & EMOT. HARM § 40 (2012).

[9]     The Court further finds it doubtful that, even if such facts were alleged, any special relationship would be established. The two police departments are overseen by two distinct municipalities.

### (3)  *Count Seven: False Imprisonment*

Count Seven of the proposed amended complaint alleges that the Johnsons were falsely imprisoned. False imprisonment is "the unlawful violation of the personal liberty of another." I.C. § 18-2901. The Idaho Civil Jury Instructions clarify that, to prove false imprisonment, the plaintiff must show: (1) the defendant used force or an implied threat of force to restrain or detain plaintiff's personal liberty; (2) the defendant acted intentionally; (3) the defendant acted unlawfully; (4) the restraint was without consent and against the will of the plaintiff; and (5) the nature and extent of the damages. IDJI 4.10.

Although the Johnsons allege each of these elements,[10] they do not allege that any of the Nampa Defendants took these actions, let alone that they were on the scene at the time of the alleged raid. In fact, the language describing these elements all refers to Caldwell Police officers "and other law enforcement on the scene." (Dkt. 20-1 ¶ 144.) Not surprisingly, the only allegation in this Count specific to Nampa Defendants is, "[w]hatever actions the officers on the scene took, it was at least in part a reaction to the misleading information that Nampa Police Officer Doney or others in the department gave to them." (*Id.* ¶ 150.) The Court concludes that the Johnsons have not adequately pled a cause of action against Nampa Defendants for false imprisonment, because the Johnsons have not alleged that any of the Nampa Defendants were on the scene during the alleged raid.

---

[10]  The Johnsons did not describe the nature and extent of the damages, except to say that the "defendants' actions caused damage to the Johnsons." (Dkt 20-1 ¶ 151.)

**(4)    *Count Eight: Trespass***

Count Eight of the Johnsons' proposed amended complaint alleges that "Caldwell Police officers and other law enforcement on the scene entered the Johnsons' apartment without their consent" by kicking in the apartment door, and that this trespass "caused damage to the Johnsons." (Dkt. 20-1 at 18.) "Trespass is a tort against possession committed when one, without permission, interferes with another's exclusive right to possession of the property." *Walter E. Whilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund*, 916 P.2d 1264, 1274 (Idaho 1996). To prove trespass, a plaintiff must show: (1) "defendant went upon the plaintiff's land;" (2) "the plaintiff did not consent to defendant's entry on plaintiff's land;" and (3) "[t]he nature and extent of the damages to the plaintiff." IDJI 4.40; *Swanson v. Groat*, 85 P.384 (Idaho 1906) (setting forth elements of trespass).

Although the Johnsons allege each of the above elements, they do not allege any of the Nampa Defendants undertook these actions. Instead, the only language in this count specific to Nampa Defendants is the same language reproduced in seven out of eight of the Counts—that the actions the Caldwell officers took were "a reaction to the misleading information" received from Nampa Defendants. (Dkt. 20-1 at ¶ 155.) Because the Johnsons do not allege that any of the Nampa Defendants were at the scene of the alleged raid, a trespass on their part is not physically possible. Therefore, the Court finds the Johnsons have failed to state a claim for trespass on the part of the Nampa Defendants.

**MOTION TO AMEND**

## 1. Legal Standard

Here, the filing of the motion to amend in response to Nampa Defendants' motion to dismiss presents a unique procedural posture. Upon granting a motion to dismiss, the Court generally is required to grant leave to amend "if it appears at all possible that the plaintiff can correct the defect." *Vess v. Ciba-Gerigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (quoting *Balistreri*, 901 F.2d at 701) (internal quotation marks and alterations omitted). Importantly, the Ninth Circuit has adopted a "generous standard for granting leave to amend from a dismissal for failure to state a claim" and has held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 895, 926 (9th Cir. 2012) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Cook, Perkiss & Liehe*, 911 F.2d at 247) (internal quotation marks omitted). Additionally, the Federal Rules of Civil Procedure direct the Court to "freely give leave when justice so requires[,]" Fed. R. Civ. P. 15(a)(2), and instructs the Court to interpret the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed R. Civ. P. 1.

Here, however, in an effort to promote judicial economy, the Court has considered the factual allegations contained within the proposed amended complaint, and concluded the Johnsons failed to state a claim and the Nampa Defendants' motion to dismiss should be granted. Thus, without deciding the merits of the motion to amend under either Fed. R. Civ. P. 15(a)(2) or 16(b)(4), the motion to amend is, for all purposes, moot.

Rather, the more pertinent question the Court finds itself faced with is whether the Johnsons should be granted further leave to amend. The Court concludes that the Johnsons have failed to meet the Rule 16(b)(4) good cause standard for such further amendments. Once a court enters a scheduling order, it "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This "good cause" inquiry under Rule 16 "is not coextensive with an inquiry into the propriety of the amendment under Rule 15." *Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (alterations omitted) (quoting *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)). Prejudice to the non-moving party is a secondary consideration, because the Rule 16 analysis focuses on "the diligence of the party seeking the extension." *Id.*

"Good cause" for an extension exists if, despite exercising due diligence, a party cannot reasonably meet the pretrial schedule. *Id.* However, "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* Furthermore, "if [the moving] party was not diligent, the inquiry should end." *Id.* The Ninth Circuit has since reaffirmed this line of reasoning stating that parties must first "satisfy the more stringent 'good cause' showing required under Rule 16" before proceeding to the liberal standard of Rule 15. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006). The court further stated that, when evaluating undue delay, the inquiry should include "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Id.* at 953 (citing *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)).

**REPORT AND RECOMMENDATION - 23**

Here, the Johnsons failed to show good cause for missing the amendment deadline. The Johnsons had ample opportunity to amend the Complaint prior to the amendment deadline, but neglected to do so. Counsel for the Johnsons initially received the NPD report on February 24, 2014, and again on April 14, 2014, but the Johnsons failed to seek leave to amend until August 13, 2014, and only did so in response to Nampa Defendants' Motion to Dismiss. The deadline set by Judge Lodge to amend pleadings was June 24, 2014, four months after counsel for the Johnsons had first received the NPD report. If the amendments are truly a response to the information obtained from NPD's report, the Johnsons had four months the cure the deficiencies and failed to do so.

Without any explanation why the amendment deadline was missed and without any showing of diligence, the Johnsons have failed to show good cause. Further, they failed to explain why filing a motion to amend in response to Nampa Defendant's motion to dismiss would be allowed under the circumstances here. Consequently, no additional leave to amend should be granted. "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Mammoth Recreations*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)) (internal quotation marks omitted).

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED that:**

1)      Defendants' Motion to Dismiss (Dkt. 19) be **GRANTED**.

2)      Plaintiffs' Motion to Amend/Correct Complaint be **DENIED as MOOT**.

3)      Plaintiffs be given no further leave to amend their complaint.

Written objections to this Report and Recommendation must be filed within fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho Loc. Civ. R. 72.1(b), or as a result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.

Dated: **January 14, 2015**

Honorable Candy W. Dale
United States Magistrate Judge